Goldie M. PIEL, Plaintiff-Appellant,

v.

Harley GALBOL, M.D.,
Defendant-Respondent.

No. KCD 28653.

Missouri Court of Appeals,
Kansas City District.

Aug. 8, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 29, 1977.

Application to Transfer Denied
Oct. 11, 1977.

Lamar Dye, Kansas City, Elwyn L. Cady, Jr., Independence, for plaintiff-appellant.

John R. Phillips, Benjamin F. Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant-respondent.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

TURNAGE, Judge.

Goldie Piel brought suit against Dr. Harley Galbol in which she alleged Dr. Galbol

failed to diagnose a cervical cancer. She alleged the failure to make this diagnosis resulted in delayed treatment and prolonged her pain and suffering. At the close of the plaintiff's evidence, presented to a jury, the court sustained a motion for directed verdict in favor of Dr. Galbol. Mrs. Piel appeals from the judgment entered after this motion was sustained.

On this appeal plaintiff contends the court erred because the evidence showed Piel had a large tumor growing from the cervix and the court should have applied the common knowledge doctrine to allow the jury to find, without medical testimony, Galbol was negligent in failing to have a biopsy performed and in failing to properly diagnose her condition. In the alternative, Piel seeks a new trial in order to allow her to present expert testimony. Affirmed.

The oral testimony consisted of Mrs. Piel and her two daughters. This evidence revealed Mrs. Piel had been a patient of Dr. Galbol for some years and in 1972, she consulted Dr. Galbol with reference to a bloody discharge accompanied by a foul odor. She stated Dr. Galbol treated her with injections. She had a fear of cancer and asked Dr. Galbol directly if she had cancer. He replied he did not think so, but thought she had an infection.

In addition to his treatment by injection, Dr. Galbol ran a pap smear test in May, 1972, and in October, 1972. Both of these came back from the laboratory with the result "Class 2, slightly active, but benign, no tumor cells. Repeat in about six months."

Dr. Galbol performed a pelvic examination in October, 1972, but no finding was made as to the existence of a tumor. Mrs. Piel did not testify that she was aware of a tumor.

Mrs. Piel stated in December, 1972, she was not getting any better and at the insistence of her daughter went to see Dr. Lamar, a gynecologist. Dr. Lamar discovered a large cervical tumor which was later diagnosed to be cancer. When she first consulted Dr. Lamar, he ran three pap smear tests. He sent these to the same lab Dr. Galbol

had used in May and October. The results came back to Dr. Lamar on two as showing no cancer, but the third indicated highly suspicious atypia, or the possible presence of precancerous conditions. Subsequent treatment and surgery resulted in eradication of the tumor and cancer. The evidence showed that up to the date of trial there was no further evidence of any presence of cancer.

Piel first contends she made a submissible case because under the common knowledge doctrine the failure of Galbol to have a biopsy performed was prima facie negligence. Piel relies primarily upon *Corn v. French*, 71 Nev. 280, 289 P.2d 173 (1955). In that case Mrs. Corn consulted Dr. French who discovered a lump on her breast. She testified she repeatedly told Dr. French she did not want her breast removed unless a test were run which would show she in fact had cancer. Despite his promises that no such operation would be undertaken without a positive test showing the existence of cancer, Dr. French removed her breast without any test. A test performed after the surgery revealed there was no cancer. The Nevada Supreme Court held the jury was entitled to infer from their common knowledge that Dr. French should have had a microscopic examination of tissue made to determine the presence of cancer before he removed the breast.

That case does not aid Mrs. Piel here. In *Hart v. Steele*, 416 S.W.2d 927, 931[7, 8] (Mo.1967) the court stated:

> In a great majority of malpractice cases "a submissible case may only be made by expert medical testimony for otherwise a jury may not know (or guess) whether the defendant's acts did or did not conform to the required standards."

It was further held in *Hart* that the burden of proving negligence in a medical malpractice suit rests with the plaintiff and no presumption of negligence will be indulged merely by reason of an adverse result from medical treatment. Of course a physician is required to use and exercise that degree of care, skill and proficiency

which is commonly exercised by the ordinarily skillful, careful, and prudent physician engaged in a similar practice under the same and similar conditions. *Fisher v. Wilkinson*, 382 S.W.2d 627, 630[1–3] (Mo.1964). In this case there was no evidence from which a jury could find or infer that Dr. Galbol's treatment or diagnosis did not measure up to the required standard.

Here Piel failed to produce any evidence showing the existence of a tumor upon which Dr. Galbol should have run a biopsy. It would require expert testimony to establish the tumor found by Dr. Lamar in December must have been present in October and that Dr. Galbol should have discovered it. Further, it would require expert testimony to demonstrate Dr. Galbol was negligent in failing to run any tests in addition to the pap smears. To apply the common knowledge doctrine in this case would require the jury to know what diagnosis should have been made and what tests should have been run in view of the symptoms and complaints made by Piel. In addition the jury would have to know the scope and limitations of a pap smear test. This would be pure speculation and not common knowledge. To hold a jury knows a woman's breast should not be removed without a biopsy of a lump to determine the existence of cancer is quite different from ascribing sufficient knowledge to a jury to take complaints and symptoms and make a diagnosis and prescribe the tests to be run to determine the proper treatment.

■ It is true Mrs. Piel was entitled to have her evidence viewed in the light most favorable to her and to receive the benefit of all favorable inferences. *Boyle v. Colonial Life Ins. Co. of America*, 525 S.W.2d 811, 815[6] (Mo.App.1975). However, viewing the evidence in this light does not supply a basis upon which a jury could diagnose Mrs. Piel's condition and decide if Dr. Galbol made the right diagnosis and ordered the correct tests.

It is apparent the evidence in this case would not lend itself to a submission to the jury under any conceivable application of the common knowledge doctrine. The court was correct in directing a verdict in favor of Dr. Galbol.

■ Piel finally contends she is entitled to have the judgment reversed and the cause remanded to afford her the opportunity to again present her case with expert testimony. This contention was fully answered in *Surface v. Ranger Insurance Company*, 526 S.W.2d 44, 49[6, 7] (Mo.App. 1975) when the court stated:

If, on the other hand, the respondent had obtained a judgment without error, we have no power to reverse and remand in order to allow the appellant to pursue a different theory, whether it be a theory of recovery or of defense. *Owings v. White*, 391 S.W.2d 195, 197[1–3] (Mo. banc 1965).

Here, Dr. Galbol obtained a judgment without any error. Remand is, therefore, not possible.

The judgment is affirmed.

All concur.