Virginia L. POTTER, Appellant,

v.

Thomas H. POTTER, Respondent.

No. WD 31804.

Missouri Court of Appeals, Western District.

Aug. 25, 1981.

---

Lori J. Levine, Jefferson City, for appellant; Carson, Monaco, Coil, Riley & McMillin, Jefferson City, of counsel.

Clarence W. Hawk, California, for respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

Appellant first says that the trial court erred in approving an oral stipulation read into the record concerning the division of the marital property, and incorporated into the judgment because the division was required to be in writing by § 452.325 (RSMo 1978).

In the proceedings below, appellant testified: She and respondent were married October 11, 1952, and after attempts at reconciliation were finally separated in the latter part of 1979. No children were born of the marriage. Certain negotiations were made on the morning of trial looking toward a distribution of the marital property, and an agreement was reached with respect to the distribution. Appellant was to have title to a duplex in the subdivision of Temple Terrace in Moniteau County, Missouri, and respondent was to assume and discharge an obligation for its roof repair; she was to receive all the furniture and furnishings of a residence occupied by the parties at 808 Proctor Drive, California, Missouri, with the exceptions of personal property in the house which were to go to respondent; $1,412.00 Series E Bonds were to go to appellant, and a $2,900.00 certificate of deposit with the City National Savings and Loan Company [this CD was listed in the decree at a value of $2,000.00]; the residence located at 808 Proctor was to be set over to respondent, along with a Mercury automobile and four shares of the capital stock of the People's Bank of Jamestown, Missouri. Each party was to pay one-half of the court costs and their individual attorney fees, and there was to be no monthly maintenance awarded

to appellant, which she understood. The property settlement outlined in court, under all the circumstances, was in appellant's opinion, fair and equitable, and she asked the court to approve it. On cross-examination, appellant testified further in this respect: "Q Do you feel that this separation agreement and the distribution of this property is fair to both you and to him? A No, sir, but I will agree. THE COURT: A Well, let me explain this to you—I am not sure that I will agree. So you are going to have to convince this Court that this is fair in order for this to be approved. I suggest that you give it some strong consideration. MRS. POTTER: Well— Q (By Mr. Hawk) In other words, Mrs. Potter, the Court is telling you, before the Court will approve any separation agreement, the parties themselves have to be convinced that it is fair and thereafter to ask the Court for a settlement. MRS. POTTER: I want it over with, sir. * * * Q (By Mr. Hawk) I am asking you, are you asking this Court today to approve the separation agreement that you and your friends and your attorney with his advice and counsel, have agreed and entered into with your husband? Are you asking the Court to approve that agreement in all respects? A Yes, sir, I am asking him to. Q And taking everything into consideration, that you feel that it is fair and equitable? A Well, yes___yes, sir; yes, sir. Q Do you want additional time to think about it? A No, I have been through too much. Q You are without hesitation? A Yes, sir. Q Or equivocation, asking the Court to approve the property and separation agreement? A Yes, sir." The court then stated that it had before it schedules of marital property which have been filed, and appellant acknowledged that she had an opportunity to review the one filed on her behalf, and that she had provided her attorney the information for preparing it. She believed the values set forth in that schedule to be a reasonable estimate, and that the agreement disposed of all the property accumulated by the parties during the marriage. Appellant's property schedule as filed showed these items: Residence $50,-

000.00; Duplex, $50,000.00; Furniture & Furnishings, $3,000.00; 1976 Mercury, $2,500.00; 19 Series "E" bonds, $1,412.36; City National S & L account, $2,900.00; 4 shares of stock in People's Bank of Jamestown, "unk.". Although the court stated that a written property settlement agreement would be filed, it was not done.

Respondent had filed his schedule of property with the trial court, but that schedule has not been provided this court. He agreed that the separation agreement was fair and equitable, that it disposed of all marital property and he asked that it be approved. Obviously, the court had evidence of values of the property before it which it specifically found. Awarded to appellant was property valued at $57,312.36, consisting of real estate, $50,000.00; furniture and furnishings, $3,000; bonds, $1,412.36; certificates of deposit; $2,900.00. To respondent there was awarded real estate, $50,000.00; automobile, $2,500.00; and 4 shares of bank stock, $400.00 totalling $52,900.00.

In *Turpin v. Turpin*, 570 S.W.2d 831 (Mo. App. 1978), there was an oral recitation entered into the record of a property settlement agreement without anything being in writing. At page 835, the court construed § 452.325, "The terms of the statute are plain and unambiguous that the separation agreement must be in writing and there is no room or need for judicial interpretation here. This agreement, made the day of the trial, was not written (indeed, if such an agreement was in fact reached). The trial court simply adopted it without evidence or other information (so far as appears from this record) as to the factors which required its consideration even had the purported agreement been reduced to writing before the Court could determine whether or not such written agreement was conscionable or unconscionable, as it was the Court's statutory duty to do." The court reversed the judgment and remanded the case for an evidentiary hearing, in part, as to the marital property and its disposition. Then, in *Wilhoit v. Wilhoit*, 599 S.W.2d 74 (Mo.App. 1980), the court again dealt with an oral agreement as to property division, and said

as reasons for the rule announced in the *Turpin* case, supra, and at page 77, "The terms of § 452.325 that spouses, attendant to separation or dissolution, 'may enter into a written separation agreement' was given effect [in *Turpin v. Turpin*, supra, l.c. 835] to impose the condition of written agreement to the operation of that section. The provision means, simply, that spouses may settle their property rights between them by agreement rather than by the method of judicial division under § 452.330—but if they do, the expression of that assent must be written. The rationale is to avoid dispute and manifests once again a transcendent purpose of the Dissolution of Marriage Act to avoid litigation beyond the dissolution proceeding, itself."

The *Turpin* and *Wilhoit* cases settle the matter that if the parties agree upon a distribution of marital property, the agreement *must* be in writing. That was not done here which necessitates reversal and remand for a possible resolution by the consummation of a writing dividing marital property, *and* a judicial pronouncement that any such agreement is not unconscionable *as a matter of judgment* (*Wilhoit*, supra, page 78[6]), considering the relevant factors of § 452.330: "(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) The value of the property set apart to each spouse; (3) The economic circumstances of each spouse at the time the division of property is to become effective, * * * (4) The conduct of the parties during the marriage." Appellant's second contention is that the court did not have evidence of or make findings of these statutory factors, but that deficiency may obviously be supplied upon remand. Of course, if the parties are unable to agree in writing as to a just division of property, the court may judicially divide the same, using the factors of § 452.330.

The judgment is reversed and the case is remanded for further proceedings.

All concur.